## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **DONNA GALLER PAULSSON,** | : | |
| | : | **CIVIL ACTION FILE NO.** |
| **Plaintiff,** | : | **1:24-CV-05691-LMM-RDC** |
| | : | |
| **v.** | : | **JURY TRIAL DEMANDED** |
| | : | |
| **AETNA RESOURCES, LLC,** | : | |
| | : | |
| **Defendant.** | : | |

## AMENDED AND RESTATED COMPLAINT
## FOR DAMAGES AND EQUITABLE RELIEF

COMES NOW DONNA GALLER PAULSSON, Plaintiff, and pursuant to Fed.R.Civ.P. 15(a)(1)(A) files her Amended and Restated Complaint for Damages and Equitable Relief against Defendant AETNA RESOURCES, LLC ("AETNA") showing this Honorable Court as follows:

## JURISDICTION AND VENUE

1.      This civil action is brought pursuant to Title I of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §12101 *et seq.* (the "ADA") and Title I of the Civil Rights Act of 1991 to remedy unlawful employment practices based on a disability.

2.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§1331, 1337, 1343 and 1345.

3.     Venue is proper in this Court because AETNA has conducted business in this judicial district and the employment practices involved in this dispute occurred in this judicial district.

## **PARTIES**

4.     Plaintiff DONNA GALLER PAULSSON ("Mrs. Paulsson") is an individual currently residing in Atlanta, Dekalb County, Georgia.  At all relevant times, Mrs. Paulsson was an "employee" of AETNA within the meaning of the ADA.

5.     At all relevant times Mrs. Paulsson was a "qualified employee" as defined by 42 U.S.C. §12111(8) of the ADA because she was employed by AETNA and at all relevant times was able to perform the essential functions of the position she held, with or without reasonable accommodation.

6.     Defendant AETNA RESOURCES, LLC is a foreign corporation based in Hartford, Connecticut.  It may be served with process by and through its registered agent, CT Corporation System, 289 S. Culver St., Lawrenceville, Gwinnett County, Georgia 30046.

7.     At all times pertinent to this action, AETNA was Mrs. Paulsson's "employer" as that term is defined by the ADA, 42 U.S.C. § 12111(5)(A).

8.     At all relevant times, AETNA was engaged in the business of providing health insurance products and related services, including medical,

pharmacy, dental and other benefits throughout the United States.  AETNA had at least 25 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year.

<u>**EXHAUSTION OF ADMINISTRATIVE REMEDIES**</u>

9.    Mrs. Paulsson exhausted her administrative remedies under the ADA by timely filing a Charge of Discrimination for alleged discrimination on the basis of a disability with the EEOC on April 19, 2024, within 180 days of the last act of alleged discrimination.    The EEOC assigned Mrs. Paulsson's Charge of Discrimination number 410-2024-07477.

10.    On September 25, 2024, the EEOC issued Mrs. Paulsson a Determination and Notice of Rights on her Charge of Discrimination.

11.    This civil action is brought within 90 days of Mrs. Paulsson's receipt of the EEOC's Determination and Notice of Rights on her Charge for alleged discrimination on the basis of a disability.

12.    On October 21, 2024, AETNA notified Mrs. Paulsson of its intent to terminate her employment due to an alleged workforce reduction.

13.    On November 8, 2024, Mrs. Paulsson filed a timely Charge of Discrimination alleging unlawful retaliation under the ADA, as amended, with the EEOC.  The EEOC assigned Charge number 415-2025-00516 to Mrs. Paulsson's Charge of Discrimination for alleged unlawful retaliation.

14.    On December 20, 2024, the EEOC issued Mrs. Paulsson    a Determination and Notice of Rights on her Charge of Discrimination alleging unlawful retaliation against AETNA.

15.    This amended and restated Complaint is brought within 90 days of Mrs. Paulsson's receipt of the EEOC's Notice of Rights on her Charge of Discrimination alleging unlawful retaliation.

## STATEMENT OF FACTS

16.    On or about August 12, 2019, Mrs. Paulsson became employed by AETNA in its Provider Optimization Analytics Department as a Senior Information Analyst.  Her most recent job title with AETNA was "Decision Scientist."

17.    As a Decision Scientist for AETNA, her primary job duty included supporting AETNA's Fraud, Waste and Abuse program within its Analytics and Behavior Change organization by analyzing and researching healthcare data and working with internal business partners, clients and external vendors to produce ideas for detecting fraud, waste and abuse in AETNA's claim data.

18.    Because of her significant subject matter expertise in the field, AETNA assigned Mrs. Paulsson to work exclusively on a complex concept designed to generate significant cost savings by detecting fraudulent claims, known as the "SAR 281 Certification Project."

19.    Mrs. Paulsson suffers from Attention Deficit Disorder ("ADD"), a diagnosed disability which substantially limits her ability to focus and concentrate.

20.    Mrs. Paulsson is prescribed medication to mitigate the effects of her ADD.

21.    Mrs. Paulsson's ADD diagnosis was known to AETNA.

22.    Mrs. Paulsson is a qualified individual with a disability because she can perform the essential functions of her job with or without a reasonable accommodation.

23.    In or about mid-September 2023, AETNA placed Mrs. Paulsson under the direct supervision of Kacie Fitzpatrick-Dunavan, the lead of AETNA's Provider Optimization Analytics Unit.

24.    Beginning on or about October 2, 2023, Ms. Fitzpatrick-Dunavan repeatedly subjected Mrs. Paulsson to a severe or pervasive hostile work environment because of her disability.

25.    Ms. Fitzpatrick-Dunavan repeatedly asked Mrs. Paulsson why she could not work on more than the SAR 281 Certification Project, even though Mrs. Paulsson repeatedly explained to her that Pati Serio, AETNA's Senior Director, Data Science, had specifically instructed Mrs. Paulsson to work exclusively on the SAR 281 Certification Project.

26.    Ms. Fitzpatrick-Dunavan would repeatedly make comments to Mrs.

Paulsson, like "maybe your ADD is the reason that you cannot work on more than one project at a time," and that Ms. Paulsson "needed to learn to work on more than one thing at a time."

27.    Ms. Fitzpatrick-Dunavan also criticized Mrs. Paulsson by repeatedly asking her how she managed her time and organized her work, stating that Mrs. Paulsson needed to keep a list of everything she did in a workplace database for Ms. Fitzpatrick-Dunavan to monitor.

28.    Ms. Fitzpatrick-Dunavan suggested to Mrs. Paulsson that because of her ADD she needed help with time management.  When Mrs. Paulsson denied needing help with time management, Ms. Fitzpatrick-Dunavan asked her, "then why did you work on the SAR 281 Certification Project for a whole year?" even though Ms. Fitzpatrick-Dunavan knew that Mrs. Paulsson had been directed to do so by Pati Serio, AETNA's Senior Director, Data Science.

29.    Such comments by Ms. Fitzpatrick-Dunavan about Mrs. Paulsson's ADD were commonplace and occurred on multiple occasions during September and early October 2023.

30.    When Ms. Fitzpatrick-Dunavan would make such comments to Mrs. Paulsson, she referred Ms. Fitzpatrick-Dunavan to Senior Director Pati Serio, the individual who had directed Mrs. Paulsson to work exclusively on the SAR 281 Certification Project.

31.     In addition, around the same time, Ms. Fitzpatrick-Dunavan began pouring over all of Mrs. Paulsson's files to see what work she had been doing in the last year.

32.     During the first week of October 2023, Mrs. Paulsson complained to Pati Serio about the harassing conduct she was experiencing from Ms. Fitzpatrick-Dunavan.

33.     In response, Ms. Serio confirmed to Mrs. Paulsson that she had directed Mrs. Paulsson to work exclusively on the SAR 281 Certification Project, just as Mrs. Paulsson had informed Ms. Fitzpatrick-Dunavan on numerous occasions.  Ms. Serio also informed Mrs. Paulsson that she would speak to Ms. Fitzpatrick-Dunavan about her comments related to Mrs. Paulsson's disability.

34.     Despite Mrs. Paulsson's complaint to Ms. Serio, AETNA failed to take prompt, remedial action to prevent Ms. Fitzpatrick-Dunavan's harassing behavior from reoccurring, and her harassment of Mrs. Paulsson because of her disability continued.

35.     On or about October 23 or 24, 2023, Ms. Fitzpatrick-Dunavan again interrogated Mrs. Paulsson about why it was she had worked on the SAR 281 Certification Project for a full year to the exclusion of other projects, even though the two had had this same conversation on multiple prior occasions.  When Mrs. Paulsson informed Ms. Fitzpatrick-Dunavan that they had previously discussed

this topic, Ms. Fitzpatrick-Dunavan would inform Mrs. Paulsson that she (Ms. Fitzpatrick-Dunavan) just "didn't get it," and commenting on Mrs. Paulsson's ADD and her alleged inability to "multitask."

36.    On at least one occasion, Ms. Fitzpatrick-Dunavan informed Mrs. Paulsson that "the only reason Mrs. Paulsson worked on the [SAR 281 Certification Project] for an entire year is because of [her] ADD."

37.    On or about October 26, 2023, because of the stress resulting from Ms. Fitzpatrick-Dunavan's continued harassing behavior, Mrs. Paulsson felt compelled to take a leave of absence from AETNA.

38.    On October 21, 2024, AETNA informed Mrs. Paulsson that her employment with AETNA would be terminated due to a workforce reduction.

39.    On information and belief, AETNA has since replaced Mrs. Paulsson with a non-disabled individual outside her protected class.

## COUNT I

## VIOLATION OF THE ADA:

## HOSTILE WORK ENVIRONMENT
## BECAUSE OF A DISABILITY

40.    Plaintiff realleges paragraphs 16-39 of her Complaint as if fully set forth.

41.    Throughout the month of October 2023, Mrs. Paulsson was subjected to severe or pervasive harassment constituting a hostile work environment because

of her disability at the hands of Kacie Fitzpatrick-Dunavan.

42.    Specifically, Ms. Fitzpatrick-Dunavan regularly harassed Mrs. Paulsson because of her ADD impairment.

43.    This harassing conduct was both objectively and subjectively offensive to Mrs. Paulsson.

44.    Mrs. Paulsson complained about Ms. Fitzpatrick-Dunavan's harassing behavior in the workplace to AETNA's Senior Director, Pat Serio.

45.    As a result of complaining directly to Ms. Serio about Ms. Fitzpatrick-Dunavan's behavior in the workplace, AETNA had actual knowledge of Ms. Fitzpatrick-Dunavan's harassing conduct.

46.    Despite Mrs. Paulsson's complaint(s) to Ms. Serio, no preventive or corrective action was taken by AETNA to prevent the harassment from recurring.

47.    Mrs. Fitzpatrick-Dunavan's harassment of Mrs. Paulsson because of her disability continued after Mrs. Paulsson reported the harassment to AETNA.

48.    On or about October 21, 2024, AETNA notified Mrs. Paulsson of her termination due to an alleged workforce reduction.

49.    On information and belief, unlike Mrs. Paulsson, no other AETNA employee on Mrs. Paulsson's team or department is scheduled to be terminated.

50.    AETNA's actions have caused, and will continue to cause, Mrs. Paulsson to suffer damages for lost wages and benefits, emotional distress, mental

anguish, loss of enjoyment of life, and other non-pecuniary losses all in an amount to be established at trial.

51.    AETNA's actions were done with malice and/or a reckless disregard for Mrs. Paulsson's federally protected civil rights, entitling her to an award of punitive damages in an amount to be determined by the enlightened conscience of a jury.

**COUNT II**

**<u>VIOLATION OF THE ADA:</u>**
**<u>DISCRIMINATION ON THE BASIS OF A DISABILITY</u>**

52.    Plaintiff realleges paragraphs 16-39 of her Complaint as if fully set forth.

53.    The ADA prohibits an employer from discriminating "against a qualified individual with a disability because of the disability of such individual in regard to … discharge of employees."  42 U.S.C. § 12112(a).

54.    Mrs. Paulsson suffers from a physical impairment which significantly impairs her major life activity of concentrating.

55.    Notwithstanding this physical impairment, Mrs. Paulsson was at all relevant times able to perform the essential functions of her Decision Scientist duties for AETNA.

56.    Mrs. Paulsson is a qualified individual with a disability.

57.    On October 21, 2024, AETNA notified Mrs. Paulsson that her

employment was being terminated due to an alleged workforce reduction.

58.    On information and belief, no non-disabled AETNA employee on Mrs. Paulsson's team or in her Department has been notified of his/her separation.

59.    AETNA's stated reason for terminating Mrs. Paulsson's employment is pretextual.

60.    In terminating her employment, AETNA has treated Mrs. Paulsson less favorably than other similarly-situated employees who are outside Mrs. Paulsson's protected class.

61.    AETNA has discriminated against Mrs. Paulsson on the basis of her disability by using qualification standards that tend to screen-out an individual with a disability without showing that this was job-related for Mrs. Paulsson's position and consistent with business necessity.

62.    AETNA's actions have caused, and will continue to cause, Mrs. Paulsson to suffer damages for lost wages and benefits, emotional distress, mental anguish, loss of enjoyment of life, and other non-pecuniary losses all in an amount to be established at trial.

63.    AETNA's actions were done with malice and/or a reckless disregard for Mrs. Paulsson's federally protected civil rights, entitling her to an award of punitive damages in an amount to be determined by the enlightened conscience of a jury.

64.    AETNA's violation of Mrs. Paulsson's ADA rights was willful or done with malice or reckless indifference to the consequences of Mrs. Paulsson's federally protected rights under the ADA, as amended.

## COUNT III

### VIOLATION OF THE ADA: DISCRIMINATION BASED ON BEING PERCEIVED OR "REGARDED AS" AN INDIVIDUAL WITH A DISABILITY

65.    Plaintiff realleges paragraphs 16-39 of her Complaint as if fully set forth.

66.    AETNA regarded Mrs. Paulsson as having one or more physical impairments which substantially limited one or more major life activities.

67.    Irrespective of whether Mrs. Paulsson has a "disability" as defined by 42 U.S.C. § 12102(2)(C), AETNA perceived her as an individual having a disability.

68.    AETNA unlawfully discriminated against Mrs. Paulsson in violation of the ADA, as amended, when it perceived or regarded her as having a disability and terminated her as a result.

69.    As a direct and proximate cause of AETNA's unlawful actions, Mrs. Paulsson has suffered both economic and non-economic losses in an amount to be specifically proven at trial.

70.    At all relevant times, Mrs. Paulsson had the requisite skill and other

job-related requirements needed to satisfactorily perform her position.

71.    AETNA's actions have caused, and will continue to cause, Mrs. Paulsson to suffer damages for lost wages and benefits, emotional distress, mental anguish, loss of enjoyment of life, and other non-pecuniary losses all in an amount to be established at trial.

72.    AETNA's actions were done with malice and/or reckless disregard for Mrs. Paulsson's federally protected rights under the ADA, as amended, entitling her to an award of punitive damages in an amount to be determined by the enlightened conscience of a jury.

## COUNT IV

## <u>VIOLATION OF THE ADA:</u><br><u>UNLAWFUL RETALIATION</u>

73.    Plaintiff realleges paragraphs 16-39 of her Complaint as if fully set forth.

74.    On or about April 19, 2024, Mrs. Paulsson filed a Charge of Discrimination with the Atlanta District Office of the EEOC for alleged discrimination on the basis of her disability.

75.    The filing of Mrs. Paulsson's Charge of Discrimination with the EEOC alleging disability discrimination constituted protected speech.

76.    On or about October 21, 2024, AETNA notified Mrs. Paulsson that it was terminating her employment due to an alleged workforce reduction.

77.    A causal connection exists between Mrs. Paulsson's protected speech and her termination.

78.    On information and belief, no other AETNA employee from Mrs. Paulsson's team or department has been separated by AETNA due to an alleged workforce reduction.

79.    AETNA's decision to terminate Mrs. Paulsson's employment while out on disability leave was retaliatory and unlawful.

80.    AETNA's stated reason for separating Mrs. Paulsson's employment is pretextual and the real reason for AETNA's decision to terminate Mrs. Paulsson is because she engaged in protected speech related to harassment she received because of her disability.

81.    As a result of her termination from AETNA, Mrs. Paulsson has suffered damages in an amount to be specifically proven at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Mrs. Paulsson respectfully prays that this Court:

1.    Grant a permanent injunction enjoining AENTA and its agents from engaging in any employment practice which discriminates against Mrs. Paulsson and other similarly situated individuals because of their status of being disabled as defined by the Americans with Disabilities Act, as amended;

2.    Grant Mrs. Paulsson judgment in her favor and against AETNA on all

Counts of his Complaint;

3.    Order AETNA to make Plaintiff whole by providing for her out-of-pocket losses as well as back pay in an amount equal to the sum of any wages, salary, employment benefits or other compensation denied or lost as a result of AETNA's unlawful and discriminatory acts, together with interest thereon, all in an amount to be proven at trial;

4.    Order AETNA to compensate Mrs. Paulsson for mental and/or emotional damages and other compensatory damages suffered as a result of AETNA's unlawful discriminatory and retaliatory acts;

5.    Award Mrs. Paulsson punitive damages for AETNA's willful and intentional violations of the ADA as provided by 42 U.S.C. §§12117(a), 12203(c) and Title VII, as provided by 42 U.S.C. §1981a(b);

6.    Award Mrs. Paulsson front pay and benefits in the amount she would have earned or until such time as she obtains or could reasonably obtain such pay and benefits;

7.    Grant Mrs. Paulsson a jury trial on all issues so triable;

8.    Grant to Mrs. Paulsson her reasonable attorney's fee and reasonable expert witness fees together with any and all other costs associated with this action as provided by law; and

9.    Grant such additional relief as the Court deems proper and just.

This 20th day of December 2024.

Respectfully submitted,

*/s/ Dean R. Fuchs*
DEAN R. FUCHS
Georgia Bar No. 279170

SCHULTEN WARD TURNER & WEISS, LLP
260 Peachtree Street, NW, Suite 2700
Atlanta, GA 30303
(404) 688-6800 telephone
d.fuchs@swtwlaw.com

Attorney for Plaintiff

16